1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

7  UNITED STATES OF AMERICA,                )
                                            )
8                        Plaintiff,         )        Case No. 2:06-cr-00200-RLH-PAL
                                            )
9  vs.                                      )
                                            )        **REPORT OF**
10 MARCO GODINEZ,                           )
                                            )   **FINDINGS AND RECOMMENDATION**
11                       Defendants.        )
   _____)        (M/Suppress - #22)
12

13        This matter is before the Court on Defendant Marco Godinez' Motion to Suppress Evidence

14 (#22) which was referred to the undersigned for Findings and Recommendations pursuant to 28 U.S.C.

15 § 636(b)(1)(B), and LR IB 1-3 and IB 1-4.  The Court has considered the motion and the Government's

16 Response (#23).

17                              **BACKGROUND**

18        The defendant, Marco Godinez ("Godinez") is charged in a criminal indictment (#1) returned

19 June 7, 2006, with two counts of distribution of a controlled substance in violation of 21 U.S.C.

20 §§ 841(a)(1), (b)(1)(C), and (b)(1)(B)(viii) and one count of possession of a controlled substance with

21 intent to distribute in violation of §§ 841(a)(1), (b)(1)(B)(ii).  The indictment also contains forfeiture

22 allegations.  The indictment arises out of two "controlled buys" by an undercover agent of the United

23 States Drug Enforcement Administration's ("DEA's") Accelerated Domestic Market Disruption

24 ("ADMD") Task Force in which Godinez allegedly sold the undercover agent cocaine and

25 methamphetamine.  The ADMD Task Force originally identified Godinez from information supplied by

26 a paid confidential informant ("C.I.").  During the course of the controlled buys, Godinez allegedly

27 informed the undercover agent that he had access to much larger quantities of cocaine and

28 methamphetamine.

1    After the second controlled buy, DEA Special Agent Christopher Cadogan ("Cadogan") applied

2    for a search warrant for Godinez' residence at 9155 Mango Stone Lane in Las Vegas, Nevada.  Cadogan

3    and other members of the ADMD Task Force believed Godinez resided there based upon their

4    investigation and surveillance of the property.  Cadogan averred, based on his training and experience,

5    that documents and proceeds from narcotics trafficking would be found in the residence.  The search

6    warrant application was reviewed by U.S. Magistrate Judge Lawrence Leavitt who issued a search

7    warrant on June 2, 2006.  The search warrant was executed the same day.  Cocaine, two rifles, two

8    handguns, and miscellaneous paperwork were recovered.

9    In the instant motion, Godinez requests an evidentiary hearing, and seeks to suppress all of the

10   items seized from his residence.  He asserts Cadogan's affidavit contained false information because he

11   vouched for the reliability of the confidential informant.  He argues that because information relayed by

12   the confidential informant was not corroborated, Cadogan's reliance on the warrant was unreasonable

13   and the particularity of the warrant is "in doubt" because Cadogan's affidavit relies on information

14   which was not reliable.  He also asserts the warrant was so lacking in indicia of probable cause as to

15   render official belief in its existence entirely unreasonable because the ADMD Task Force did not

16   conduct an independent investigation of the C.I.'s information to determine whether he was reliable or

17   trustworthy.  Finally, Godinez argues the affidavit did not provide the issuing judge any information

18   concerning the C.I.'s criminal history "which greatly impacts the informant's veracity."  Although

19   Godinez is not aware of any critical [adverse] information concerning the C.I., he argues that if the

20   ADMD Task Force had informed Judge Leavitt of the true nature and extent of the C.I.'s history and

21   involvement, a warrant would not have been issued.

22   The government responds that Godinez's argument concerning the failure to corroborate the

23   C.I.'s information "does not make any sense whatsoever," and that there was overwhelming probable

24   cause for the search warrant.  In the unlikely event the court finds the search warrant lacking in

25   probable cause, the government relies on the good faith exception to the exclusionary rule articulated in

26   United States v. Leon, 468 U.S. 897 (1984).

27   / / /

28   / / /

2

**DISCUSSION**

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. Katz v. U.S., 389 U.S. 347 (1967). The Fourth Amendment protects "people not places." Id. Evidence obtained in violation of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the poisonous tree." Wong Sun v. U.S., 371 U.S. 471 (1963).

**I.     Evidentiary Hearing**

The United States Court of Appeals for the Ninth Circuit has held that an evidentiary hearing on a motion to suppress need only be held if the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that contested issues of material fact exist. United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000), citing, United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986); United States v. Harris, 914 F.2d 927, 933 (7th Cir. 1990); United States v. Irwin, 613 F.2d 1182, 1187 (9th Cir. 1980); United States v. Carrion, 463 F.2d 704, 706 (9th Cir. 1972) ("Evidentiary hearings need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that relief must be granted if the facts alleged are proved."). "A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required." Howell, 231 F.3d at 621, citing, Harris, 914 F.2d at 933. The determination of whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court. United States v. Santora, 600 F.2d 1317, 1320 (9th Cir.), amended by 609 F.2d 433 (1979). Although the caption of the motion to suppress requested an evidentiary hearing, the motion itself does not articulate any contested issue of fact which requires an evidentiary hearing. The request for an evidentiary hearing is, therefore, denied.

**II.     Probable Cause**

In Illinois v. Gates, 462 U.S. 213 (1982), the United States Supreme Court held that a determination of probable cause is made by examining the "totality of the circumstances." The
/ / /

3

1    Supreme Court has repeatedly emphasized that the probable cause standard is a "practical,

2    non-technical conception."  Brinegar v. U.S., 338 U.S. 160, 176 (1949).

3         A probable cause determination is two-fold.  First, judges must determine the "historical facts,"

4    that is, the events that occurred leading up to the stop or the search.  Ornelas v. U.S., 517 U.S. 690

5    (1996).  Second, judges are to decide "whether those historical facts, viewed from the standpoint of a

6    reasonable police officer," amount to probable cause.  Id. at 696-97.  A judge's decision regarding

7    probable cause should be given great deference.  The duty of a reviewing court is to insure that the

8    magistrate had a substantial basis for concluding that probable cause existed.  A reviewing court is

9    required to examine all the circumstances set forth in the affidavit, and in doubtful cases, to give

10   preference to the validity of the warrant.  U.S. v. Peacock, 761 F.2d 1313, 1315 (9th Cir.), cert. denied,

11   474 U.S. 847 (1985).

12        A "magistrate may rely on the conclusion of experienced law enforcement officers regarding

13   where evidence of a crime is likely to be found."  U.S. v. Fannin, 817 F.2d 1379, 1381 (9th Cir. 1987).

14   An officer need not include *all* of the information in his possession to obtain a search warrant.  An

15   affidavit need only show facts adequate to support the finding of probable cause.  U.S. v. Johns, 948

16   F.2d 599, 605 (9th Cir. 1991).  "Trustworthy information" must be used to support a probable cause

17   determination and can include a tip from an informant, so long as the tip is reliable.  See Gates, 462

18   U.S. at 283.  Reliability may be shown by the informant's past record of reliability, through independent

19   confirmation, or personal observation by the police, or by other methods.  See Alabama v. White,

20   496 U.S. 325 (1990).

21        Godinez contends the affidavit supporting this warrant contains false information, specifically,

22   because the affiant vouched for the reliability of a C.I. without conducting an independent investigation

23   or corroborating the information supplied.  He asserts that the affidavit supporting this search warrant

24   was so lacking in probable cause to make official reliance on it unreasonable.  The court's review of the

25   affidavit supporting the search warrant suggests otherwise.  The affidavit related that the investigation

26   of Godinez was initiated as a result of information received from a reliable LVMPD confidential source

27   who had, in the past, provided law enforcement information which was subsequently corroborated by

28   independent investigation.  (Government's Opposition (#23), Exhibit "1," Cadogan Affidavit, ¶ 5.)

4

1   As a result of the information received from the C.I., an undercover officer arranged and made two

2   hand-to-hand purchases from Godinez on April 6 and April 13, 2006.  (Id., ¶¶ 6, 7, and 9.)  During the

3   first controlled buy, Godinez told the undercover officer that he had distributed high volumes of

4   cocaine, was well connected to drug traffickers in Mexico, and could provide the undercover officer

5   with any amount of cocaine he wanted.  (Id., ¶ 7.)  Thus, contrary to the Godinez' arguments, the search

6   warrant was not based on the uncorroborated statements of the C.I. that Godinez was involved in drugs,

7   but on two hand-to-hand sales, and Godinez' statements to the purchasing undercover officer.

8          Finally, although Godinez does not cite Franks v. Delaware, he seems to suggest there was a

9   Franks violation which warrants suppression based on the issuing judge's reliance on a deliberately or

10  recklessly false information in the affidavit.  In Franks, the Supreme Court held that a defendant could

11  challenge a facially valid affidavit by making a substantial preliminary showing that (1) the affidavit

12  contains intentionally or recklessly false statements, and (2) that without the false statements, the

13  affidavit would be insufficient to support a finding of probable cause.  438 U.S. 154 (1978).  Here,

14  Godinez has not asserted that the C.I. provided false or misleading information, only that Cadogan

15  improperly vouched for his or her reliability without conducting an independent investigation.  He also

16  suggests that because the affidavit itself did not provide any information regarding the confidential

17  informant's criminal history, his or her reliability could not be adequately assessed by the issuing judge.

18  Here, the affidavit indicated the C.I. had provided reliable information to law enforcement in the past

19  which had been investigated and corroborated.  Godinez does not know of any negative information

20  regarding the informant which, if provided to the issuing judge, may have influenced his decision to

21  issue the warrant.  Moreover, contrary to the defendant's arguments, the information provided by the

22  C.I. that Godinez was involved in drug trafficking was corroborated by the undercover officer's two

23  hand-to-hand drug purchases from Godinez and Godinez' statements to the undercover officer that he

24  distributed high volumes of cocaine, was well connected to drug traffickers in Mexico, and could

25  provide any amount of cocaine needed.  Ample probable cause supported this search warrant without

26  any reference to the manner in which the investigation of Godinez was initiated.

27  / / /

28  / / /

1

## CONCLUSION

2    The affidavit supporting the search warrant established ample probable cause under the totality

3  of the circumstances test, and Godinez has not established that the affidavit contained any intentionally

4  or recklessly false statements or misleading omissions that affected the issuing judge's determination of

5  probable cause.

6    For all of the foregoing reasons,

7    **IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that

8  Defendant Marco Godinez' Motion to Suppress Evidence (#22) be DENIED.

9    Dated this 6th day of November, 2006.

10

11    _____

12    PEGGY A. LEEN
      UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28